**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:05CV78-MU-02**
**(3:93CR215-04-MU)**

| | | |
|---|---|---|
| **JERMAINE MAURICE PADGETT,** | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| Respondent. | ) | |

**THIS MATTER** comes before the Court on petitioner's "Motion To Vacate, Set Aside, Correct Sentence" under 28 U.S.C. §2255, filed February 22, 2005; and on the government's "Answer To Petitioner's Motion To Vacate . . . And Motion To Dismiss," filed June 6, 2005. For the reasons stated herein, the government's Motion to Dismiss will be granted; and the petitioner's Motion to Vacate will be dismissed as untimely filed.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

A review of pertinent Court records reflects that on October 29, 1993, a Bill of Indictment was filed, charging the petitioner (along with eight others) with numerous federal offenses, including multiple instances of murder, kidnapping and/or other violence in aid of racketeering, all in violation of 18 U.S.C. §§1959 and 2 (Counts 2, 18, 21-22, and 28-32); with one instance

of engaging in a conspiracy to traffic in cocaine base, in violation of 21 U.S.C. §§841(a)(1) and 846 (Count One); with one instance of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §841(a)(1) (Count 24); and with four separate instances of using and carrying a firearm during and in relation to crimes of violence, all in violation of 18 U.S.C. §§924(c)(1) and 2 (Counts 23, 25, 33 and 34). The petitioner pled not guilty to those and other charges which he was facing, and eventually proceeded to trial on those matters.

The petitioner's trial got underway on July 22, 1994. Thereafter, the government dismissed the charges which were set forth against the petitioner in Counts 19, 20 and 35. However, on July 28, 1994, the jury convicted the petitioner of the other 15 charges as previously identified.

On September 12, 1994, the Court held the petitioner's Sentencing Hearing. On that occasion, the Court heard from counsel for the parties concerning an appropriate sentence for the petitioner. At the conclusion of the Hearing, the Court sentenced the petitioner to concurrent terms of life imprisonment for seven of his RICO convictions. The petitioner was sentenced to two more terms of life imprisonment on his conspiracy and substantive drug charges. In addition, the petitioner was sentenced to two concurrent 20-year terms of imprisonment for his two remaining RICO convictions. Then, for the first of his firearms

2

convictions, the petitioner received a five year sentence; and he received consecutive 20-year sentences for the remaining three firearms convictions.

Not surprisingly, the petitioner timely gave his notice of appeal to the Fourth Circuit Court of Appeals. Indeed, on appeal the petitioner argued that the government had failed to establish an interstate commerce nexus to support his federal prosecution; that the evidence was insufficient to support his convictions; that this Court had erred in certain of its rulings concerning the admission of evidence and the jury instructions; and that he had been subjected to double jeopardy by virtue of his having been sentenced both on the RICO conspiracy and the conspiracy's underlying predicate acts. See United States v. Padgett, 78 F.3d 580 (4th Cir. 1996) (unpublished).

However, the Fourth Circuit rejected all of the petitioner's claims and affirmed his convictions and sentences. Id. In particular, the Court of Appeals found that "[t]he evidence against Padgett was voluminous, with witness testimony from his co-conspirators and the victims of his crimes" Id. The appellate Court also found that this Court did not abuse its discretion or otherwise commit any reversible error in connection with the admission of evidence and the jury instructions. Id. Last, the appellate Court found that the prosecution and conviction of an individual for both the RICO conspiracy and the predicate

3

offenses simply does not violate the double jeopardy prohibition. Id.

After being rejected by the appellate panel, the petitioner next sought both rehearing with the appellate Court and Certiorari review in the United States Supreme Court. However, the petitioner's efforts were unsuccessful. Therefore, the petitioners's pursuit of direct review ended on July 3, 1996 when the Supreme Court denied his Certiorari Petition.

Nevertheless, after allowing more than nine years to pass since the conclusion of his pursuit of direct review, on February 22, 2005, the petitioner returned to this Court with this Motion to Vacate his 1994 convictions and sentences. By the instant Motion to Vacate, the petitioner argues that he was subjected to ineffective assistance of counsel by his attorney's alleged failure to communicate a plea offer to him, and his failure to make clear the risks and hazards of a jury trial. By his other claim, the petitioner argues that he received an unconstitutional sentence, essentially on the basis of the ruling announced in Apprendi v. New Jersey, 530 U.S. 466 (2000)[1] and its progeny.

Obviously aware that his Motion could be deemed time-barred, the petitioner's Motion also makes an attempt to explain the reason why he waited so long to bring this action. Indeed, the

---

[1] Apprendi holds that any factor, other than a prior conviction, which increases the statutory maximum term must be alleged in the indictment and proven beyond a reasonable doubt.

4

petitioner acknowledges that there is a one-year limitations period for habeas claims such as the instant ones. However, the petitioner points out that pursuant to 28 U.S.C. §2255, paragraph 6, subpart (4), the one-year limitation period can be calculated as running for one year from "the date on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence." In reliance upon that provision, the petitioner contends that since he filed this Motion within one year of his February 2004 discovery of the plea offer about which his attorney did not tell him, such Motion is not be time-barred.

On February 24, 2005, this Court entered an Order advising that an initial review of the petitioner's Motion to Vacate had been conducted; and that although it was not clear whether such Motion was timely filed, the government still would be required to file a response to that Motion. In particular, the government was told to respond both to the question of timeliness, as well as to the merits (or lack thereof) of the petitioner's claims.

Consequently, after obtaining an extension of time, on June 6, 2005, the government filed its "Answer To Petitioner's Motion To Vacate . . . And Motion To Dismiss." By that combined pleading, the government asserts, inter alia, that there actually was no plea offer about which counsel could have advised the petitioner. Consequently, in the absence of that factual predicate, there simply is no basis upon which to extend the petitioner's

one-year deadline.

On June 27, 2005, the petitioner filed a "Traverse" to the government's Answer. Such Traverse primarily takes issue with the government's erroneous assertion that the petitioner is seeking "equitable tolling," rather than an application of one of the extension provisions set forth in under §2255. Notwithstanding the accuracy of this particular challenge by the petitioner, the Court finds that the government is correct in its ultimate contention that the petitioner's Motion to Vacate has been filed outside the one-year limitations period. Therefore, this matter must be <u>dismissed</u> as time-barred.

## II.  **ANALYSIS**

As has been alluded to, in 1996 Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA," hereafter). Among other things, the AEDPA amended 28 U.S.C. §2255 by imposing a 1-year statute of limitations period for the filing of a motion to vacate or correct. Such amendment provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed,

6

if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

In the instant case, the record makes clear, and the petitioner does not deny, that the U.S. Supreme Court rejected his Certiorari Petition on June 3, 1996; therefore, his convictions and sentences became final on that date. In the absence of any intervening circumstances, the petitioner had up to June 3, 1997 in which to file the instant Motion to Vacate. Obviously, however, the petitioner did _not_ file this Motion by that date.

Rather, the petitioner waited more than an additional 7 ½ years to file this Motion. In an attempt to have such Motion declared timely filed, the petitioner asserts that he did not learn of the factual predicate for a portion of one of his claims until February 2004; therefore, he argues that his entire Motion should be deemed timely filed since he brought it within one year of the date he discovered such information. However, the petitioner's argument is flawed, and must be flatly rejected.

Indeed, the Court first notes that even if a portion of the petitioner's first claim could be deemed timely filed by virtue of the explanation in question, that fact would have no impact on the petitioner's other claims. That is, inasmuch as the

7

remaining portion of the petitioner's first claim--that counsel failed to advise him of the potential risks and hazards of trial --was a matter about which he clearly knew or should have known within one year of the time that his case became final, that claim clearly is time-barred and subject to summary dismissal in any event.

Similarly, in light of the fact that neither <u>Apprendi</u> nor its progeny can be relied upon in this collateral proceeding, the petitioner's second claim is subject to summary dismissal.  <u>See United States v. Morris</u>, 429 F.3d 65, 72 (4th cir. 2005) (holding that the rule from progeny case <u>Booker/Fanfan</u>, 543 U.S. 220 (2005), is <u>not</u> retroactively applicable in a collateral review context such as this); <u>and</u> <u>United States v. Sanders</u>, 247 F.3d 139, 145-46 (4th Cir.), <u>cert. denied</u>, 534 U.S. 1032 (2001) (holding that <u>Apprendi</u> is inapplicable on collateral review). <u>See also</u> <u>United States v. Beatty</u>, WL 175908 (unpublished 2004) (noting that the holding from progeny case <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), will not be deemed retroactively applicable on collateral review).  Therefore, notwithstanding any timeliness issues, the petitioner could not, in any case, prevail on his second claim.

Most critically, however, the Court finds that the petitioner cannot rely upon paragraph 6, subpart (4) to extend his deadline.  To be sure, even giving the petitioner the benefit of

8

the doubt[2] on the question of whether there actually was a "plea offer" about which counsel should have advised him, there simply is no reason why, with the exercise of due diligence, the petitioner could not have discovered that fact long before February 2004.

According to the petitioner, he learned of the plea offer as a result of what appears to have been a cold call from a cousin of his to his former attorney. More particularly, the petitioner reports that in or about April 2003, a cousin of his called his former defense attorney and inquired whether there was "anything more which could be done regarding [the petitioner's] case." During that conversation, the petitioner's former attorney reportedly mentioned a plea offer which had been extended to and rejected by the petitioner.

Apparently, at some unspecified time the petitioner's cousin told him about the subject conversation, and the petitioner commenced an investigation to discover the existence of such offer. By February 2004, the petitioner had received a letter

---

[2] The petitioner has submitted a copy of the letter from his attorney from February 2004 which sets forth his recollection of a "plea offer." However, upon careful consideration of these matters, it appears that counsel's recollection may have been of some precatory language which never culminated in a plea offer from the government. Indeed, also included among the documents which the petitioner submitted to the Court is a letter from the prosecutor who handled the petitioner's case. Such letter indicates that the petitioner's former attorney now claims to have no recollection of a "plea offer,"; that no such plea offer, written or otherwise, was ever made by the government; and that such prosecutor has "never made an oral plea offer in [her] career as a prosecutor." In any case, since this case is before the Court on a Motion to Dismiss, those matters cannot be considered by the Court, and the Court has assumed, for the sake of argument, that a plea offer was made.

from his attorney reporting his recollection of a "plea offer," but explaining that there was no written documentation anywhere in his file to support that recollection.

Although the petitioner focuses all of his attention on the timing of such letter, he completely ignores the more critical fact, i.e., that there was no reason why he, himself, could not have made the initial inquiry of his attorney at any point before April 2003. Indeed, the petitioner does not allege that his cousin somehow was better suited to have made the inquiry. Nor does the petitioner suggest that there is any reason why he would not have been just as successful in contacting his former attorney regarding what else could have been done in his case. Indeed, had the petitioner chosen to make such an inquiry of counsel at the conclusion of his direct appeal, he likely would have been reminded of the instant collateral proceeding as an option which he could have pursued in a timely manner.

Based upon the foregoing, then, it can hardly be concluded that the information upon which the petitioner is relying could not, with the exercise of due diligence, have been discovered before February 2004. On the contrary, it is quite apparent that had the petitioner exercised due diligence in inquiring about his remaining options with counsel, he could have discovered the subject information long before his cousin discovered it.

Finally, although the petitioner expressly denies that he is

seeking equitable tolling, the Court has, in any event, determined that he would not be entitled to such measures. That is, as the government has correctly noted, the Fourth Circuit has stated that such measure is only allowed in "those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitations period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 209 (2004). See also United States v. Sosa, 364 F.3d 507, 511-13 (4th Cir. 2004); and Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001) (internal quotations omitted).

In the instant case, the petitioner does not set forth any basis which could support a finding that it would be unconscionable to enforce the limitations period, or that a gross injustice would result from such enforcement. Therefore, equitable tolling also is not available for the petitioner.

### III. CONCLUSION

The AEDPA requires, among other things, that Motions to Vacate under 28 U.S.C. §2255 be brought within one year of the event which triggers the commencement of the limitations period. In the case at bar, the petitioner has filed his Motion to Vacate far outside of all conceivable limitations periods, and has not demonstrated an entitlement to equitable tolling. Consequently, the instant Motion to Vacate must be summarily dismissed as time-

11

barred.

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the government's Motion to Dismiss is **GRANTED;** and

2. That the petitioner's Motion to Vacate is **DISMISSED.**

**SO ORDERED.**

Signed: February 16, 2006

Graham C. Mullen
United States District Judge